IN THE MATTER OF THE PROPOSED FORECLOSURE OF CLAIM OF LIEN FILED AGAINST JEFFREY J. JOHNSON, DONNA N. JOHNSON, GARY PROFFIT AND JO PROFFIT BY STARBOARD ASSOCIATION, INC., DATED APRIL 30, 2008 RECORDED IN DOCKET No. 08-M-676 IN THE OFFICE OF THE CLERK OF SUPERIOR COURT FOR BRUNSWICK COUNTY

No. COA COA10-703

(Filed 21 June 2011)

**1. Liens— condominium assessment—calculation of unit share**

The trial court erred by dismissing a foreclosure of claim of lien for unpaid condominium assessments where respondents contended that the assessment was not computed properly. Petitioner had the authority to assess the cost of windows and doors for a building solely against the unit owners in that building, but separate findings and conclusions should have been made for the portions of the renovations that were for the common areas and facilities.

**2. Attorney Fees— after appeal—jurisdiction**

The trial court lacked jurisdiction under N.C.G.S. § 1-294 to enter an award of attorney fees where petitioner had already appealed an order dismissing the underlying action. The trial court's deferral of the issue at the time the dismissal order was entered did not create jurisdiction.

Judge HUNTER concurring in part and dissenting in part.

Appeal by petitioner from orders entered 11 December 2009 and 21 May 2010 by Judge Richard D. Boner in Mecklenburg County Superior Court. Heard in the Court of Appeals 1 December 2010.

*Sellers, Hinshaw, Ayers, Dortch & Lyons, P.A., by Michelle Price Massingale, for petitioner-appellant.*

*Kenneth T. Davies, for respondent-appellees.*

CALABRIA, Judge.

Starboard Association, Inc. ("petitioner"), appeals the trial court's order dismissing petitioner's foreclosure of claim of lien pursuant to N.C. Gen. Stat. § 1A-1, Rule 41 (2009) ("Rule 41"). Petitioner also appeals the order awarding attorney's fees in the amount of $19,780.83 to Donna N. Johnson, Jeffrey J. Johnson, Gary Proffit and Jo Proffit (collectively, "respondents"). We vacate and remand.

## I. BACKGROUND

On 18 June 1981, petitioner filed Articles of Incorporation ("the Articles") with the North Carolina Secretary of State for the purpose of administering the operation and management of Starboard By The Sea Condominium ("Starboard") in Ocean Isle Beach, North Carolina, in accordance with Chapter 47A of the North Carolina General Statutes ("the Unit Ownership Act"). A Declaration of Condominium ("the Declaration") and the By-Laws of Starboard Association, Inc. ("the By-Laws") were filed on 2 July 1981 with the Brunswick County Register of Deeds ("register of deeds") pursuant to the Unit Ownership Act. The property, known and identified as Starboard, consists of 139 residential units located in 33 separate buildings.

The Declaration was amended four times. The fifth amendment, "Phase V" beachfront property, added three condominium units in one building ("Building 33") and a second swimming pool to Starboard. Each unit in Building 33 had a 1.06160 percentage of undivided interest in Starboard's common areas and facilities. As a result of this amendment, the individual undivided interests of the other units in the common areas were recalculated, based upon the fair market value of each unit in relation to the aggregate fair market value of all units.

On 11 October 1997, petitioner's general membership amended the By-Laws ("the amended By-Laws") and authorized petitioner to make, levy, and collect assessments against members to defray costs, as provided in Article XXIII of the Declaration ("Article XXIII"). Article XXIII provided "all assessments levied against the Unit Owners and their Condominium Units shall be uniform" and, unless specifically otherwise provided for in the Declaration, all assess-

## IN RE FORECLOSURE OF JOHNSON

[212 N.C. App. 535 (2011)]

ments made by petitioner shall be in such an amount that any assessment levied against the unit owner and its condominium unit "shall bear the same ratio to the total assessment made against all unit owners and their condominium units as the undivided interest in common property appurtenant to each condominium." Article III of the amended By-Laws required petitioner's Board of Directors ("the Board") to adopt a budget for each fiscal year to estimate common expenses for, *inter alia*, operation, management and maintenance of the common property.

On 6 August 2004, respondents acquired Unit B of Building 33, Phase V, as tenants in common. Two months later, at the annual meeting of petitioner's general membership, an extensive renovation for most of Starboard's buildings was proposed, but was not approved until the 8 October 2005 annual meeting. The attending members approved the renovation project by a vote of 33 to 29 as a non-binding vote to guide the new Board. Following the annual meeting, the Board entered into a contract to renovate all the buildings except Building 33, and levied a special assessment against the unit owners of all the buildings except Building 33. The capital renovation project included: (1) replacing the exterior siding, windows, sliding glass doors; (2) installing new stairways, landings, decks, and new wiring; and (3) other repairs.

In 2006, respondents and the unit owners of Building 33 requested renovations for Building 33. The Board notified the unit owners in Building 33 to expect renovations "in the near future." Prior to the renovations for Building 33, the Board received three bids, then entered into a contract with Puckett Enterprises, Inc., to renovate Building 33. The renovations included: (1) new vinyl siding, windows, and doors; (2) renovation of the stairways and decks; (3) pylon repairs; and (4) other capital repairs and renovations.

On 8 November 2007, the Board approved a special assessment for the renovations in the amount of $55,000.00 per unit for all unit owners in Building 33. Later, the amount for each unit owner in Building 33 was lowered to $54,000.00 ("the assessment"). Subsequently, the Board adopted a written resolution ratifying the assessment. On 15 December 2007, respondents paid petitioner $27,000.00 of the assessment, under protest.

On 20 August 2008, petitioner notified respondents of a Notice of Hearing Prior to Foreclosure of Claim of Lien ("the Notice") of respondents' units. The Notice stated that the foreclosure proceedings

were initiated pursuant to N.C. Gen. Stat. § 47C due to respondents' alleged "failure to timely pay assessments and other charges levied by [Starboard]."[1] Respondents were given thirty-five days to dispute the validity of a $30,887.00 debt. On 7 October 2008, respondents filed an Objection to Foreclosure of Claim of Lien, contesting, *inter alia*, the right of petitioner to proceed with foreclosure proceedings and objecting to the validity of the alleged $30,887.00 debt which formed the basis of the foreclosure proceeding. Respondents claimed they were not in default because the assessment was not uniform and was not included in any annual budget or special assessment budget which was ratified by the Association, as required by the Articles, the Declaration, the amended By-Laws, and Chapter 47C of the North Carolina General Statutes. Respondents asked the trial court to dismiss the foreclosure proceeding with prejudice and award respondents reasonable attorney's fees. The trial court entered a consent order transferring the matter from Brunswick County to Mecklenburg County Superior Court "due to the complexity of the issues."

On 3 August 2009, at the conclusion of petitioner's evidence at the hearing, respondents moved for dismissal of this non-jury action on the ground that petitioner had no right to relief on the facts and the law. The trial court referred to the assessment in its findings as the "alleged assessment," then concluded that the assessment by the Board was unlawful because it was not computed in accordance with respondents' percentage undivided interest in the common areas and facilities and violated the Unit Ownership Act and the Declaration. The court also concluded that the alleged debt which formed the basis for petitioner's claim of lien and foreclosure of respondents' unit was invalid. The trial court entered an Order of Dismissal and Judgment on 11 December 2009 ("the 2009 order") dismissing petitioner's action with prejudice pursuant to Rule 41, and entered another order on 21 May 2010 ("the 2010 order"), awarding respondents reasonable attorney's fees in the amount of $19,780.83. Petitioner appeals both the 2009 and the 2010 orders.

## II. STANDARD OF REVIEW

"The proper standard of review for a motion for an involuntary dismissal under Rule 41 is (1) whether the findings of fact by the trial

1. While the pleadings in the instant case cited Chapter 47C of the North Carolina General Statutes, this case is governed by the provisions of Chapter 47A of the General Statutes, rather than Chapter 47C, because Chapter 47A applies to all condominiums created within this State before 1 October 1986. *See Dunes South Homeowners Assn. v. First Flight Builders,* 341 N.C. 125, 127, 459 S.E.2d 477, 477 n.1 (1995).

court are supported by competent evidence, and (2) whether the findings of fact support the trial court's conclusions of law and its judgment." *Dean v. Hill*, 171 N.C. App. 479, 483, 615 S.E.2d 699, 701 (2005) (internal quotations and citation omitted). When this Court reviews a trial court's dismissal under Rule 41, the "trial court's findings of facts supported by substantial competent evidence are conclusive on appeal, even where there is conflict in the evidence." *Smith v. Butler Mtn. Estates Property Owners Assoc.*, 324 N.C. 80, 85, 375 S.E.2d 905, 908 (1989) (citations omitted). "[A] trial court's conclusions of law are reviewable de novo on appeal." *Riley v. Ken Wilson Ford, Inc.*, 109 N.C. App. 163, 168, 426 S.E.2d 717, 720 (1993).

As an initial matter, we note that, "[i]n the absence of a valid objection, the [trial] court's findings of fact are presumed to be supported by competent evidence, and are binding on appeal." *Miles v. Carolina Forest Ass'n.*, 167 N.C. App. 28, 34 35, 604 S.E.2d 327, 332 (2004). In the instant case, petitioner does not object to any of the trial court's twenty seven findings of fact in the 2009 order. Therefore, they are binding on appeal. *Id.*

### III. FORECLOSURE OF CLAIM OF LIEN

Petitioner argues that the trial court improperly dismissed its foreclosure under claim of lien based upon petitioner's failure to allocate the cost of the renovations for the common areas for all unit owners on a *pro rata* basis in accordance with the percentage interests instead of allocating the cost per building.

### A. Unit Owners' Undivided Interest in the Common Areas

**[1]** The claims in the instant case are governed by the Unit Ownership Act, N.C. Gen. Stat. §§ 47A-1 to 28 (2008).

> Unit ownership may be created by an owner or the co owners of a building by an express declaration of their intention to submit such property to the provisions of the Article, which declaration shall be recorded in the office of the register of deeds of the county in which the property is situated.

N.C. Gen. Stat. § 47A-2. "The administration of every property shall be governed by bylaws, a true copy of which shall be annexed to the declaration. No modification of or amendment to the bylaws shall be valid, unless set forth in an amendment to the declaration and such amendment is duly recorded." N.C. Gen. Stat. § 47A-18.

N.C. Gen. Stat. § 47A-6 states:

**IN RE FORECLOSURE OF JOHNSON**

[212 N.C. App. 535 (2011)]

(a) Each unit owner shall be entitled to an undivided interest in the common areas and facilities in the ratio expressed in the declaration. Such ratio shall be in the approximate relation that the fair market value of the unit at the date of the declaration bears to the then aggregate fair market value of all the units having an interest in said common areas and facilities.

(b) The ratio of the undivided interest of each unit owner in the common areas and facilities as expressed in the declaration shall have a permanent character and shall not be altered except with the unanimous consent of all unit owners expressed in an amended declaration duly recorded.

(c) The undivided interest in the common areas and facilities shall not be separated from the unit to which it appertains and shall be deemed conveyed or encumbered with the unit even though such interest is not expressly mentioned or described in the conveyance or other instrument.

N.C. Gen. Stat. § 47A-6. In accordance with this statute and Article IV of the Declaration, each unit owner is granted an undivided interest in the common areas and facilities in the ratio expressed in the declaration, which is based upon the fair market value of the unit in relation to the total aggregate fair market value of all the units.

B. Uniform Assessments for Additions or Improvements

N.C. Gen. Stat. § 47A-9 states, in pertinent part:

The necessary work of maintenance, repair, and replacement of the common areas and facilities and the making of any additions or improvements thereto shall be carried out only as provided herein and in the bylaws.

N.C. Gen. Stat. § 47A-9. N.C. Gen. Stat. § 47A-12 states, in pertinent part:

The unit owners are bound to contribute pro rata, in the percentages computed according to G.S. 47A-6 of this Article, toward the expenses of administration and of maintenance and repair of the general common areas and facilities and, in proper cases of the limited common areas and facilities, of the building and toward any other expense lawfully agreed upon.  ·

N.C. Gen. Stat. § 47A-12. In accordance with this statute and Article XXIII of the Declaration, all assessments levied against all unit own-

ers shall be uniform and, unless specifically otherwise provided for in the Declaration, all assessments made by petitioner shall be in such an amount that any assessment levied against the unit owner and its condominium unit "shall bear the same ratio to the total assessment made against all Unit Owners and their Condominium Units as the undivided interest in Common Property appurtenant to all Condominium Units." "[T]he provisions of section 47A-12 are designed to protect unit owners from shouldering a disproportionate share of the maintenance expenses for common areas . . . ." *Dunes South Homeowners Assn. v. First Flight Builders*, 341 N.C. 125, 130, 459 S.E.2d 477, 479 (1995).

However, Article XVI of the Declaration ("Article XVI") allows for an assessment other than *pro rata* amongst all unit owners in special circumstances in which a certain unit or units are exclusively benefitted. Article XVI provides, in pertinent part:

> [W]here any alterations and improvements are exclusively or substantially for the benefit of the Owner or Owners of certain Condominium Unit or Units requesting the same, then the cost of such alterations or improvements shall be assessed against and collected solely from the Owner or Owners of the Condominium Unit or Units exclusively or substantially benefitted, the assessment to be levied in such proportion as may be determined by the Board of Directors of [Starboard].

(emphases added).

"Where a statute contains two clauses which prescribe its applicability and clauses are connected by the disjunctive 'or', application of the statute is not limited to cases falling within both clauses but applies to cases falling within either one of them." *Grassy Creek Neighborhood Alliance, Inc. v. City of Winston-Salem*, 142 N.C. App. 290, 297, 542 S.E.2d 296, 301 (2001).

> "In its elementary sense the word 'or', as used in a statute, is a disjunctive particle indicating that the various members of the sentence are to be taken separately . . . . When in the enumeration of persons or things in a statute, the conjunction is placed immediately before the last of the series, the same connective is understood between the previous members."

*Id.* (quoting 73 Am.Jur. 2d, *Statutes* § 241 (1974)). Therefore, petitioner can show that it had the authority to provide for an assessment

against respondents if it can prove that the improvements "exclusively" *or* "substantially" benefitted the units in Building 33.

Respondents contend that the units in Building 33 were not exclusively or substantially benefitted since "[t]he only unit improvements were replacement of the windows and doors, a relatively *insubstantial* part of the assessment." (emphasis added). Respondents further contend that "[t]he common areas, which by definition belong to all the unit owners, were the substantial and primary subject of the renovations and repairs to Building 33." (emphasis added). However, the test under Article XVI is a two-part test, *i.e.*, whether the improvements substantially *or exclusively* benefitted the units in Building 33. Respondents only address whether the improvements "substantially" benefitted the units. Furthermore, they argue that the common areas were the "primary" benefit of the improvements. However, "primary" is not synonymous with "exclusive."

Under the provisions of the Unit Ownership Act and the Declaration, as amended, the common areas involved in the assessment included the siding, stairways and decks, pylons, the roof, and other exterior renovations and capital improvements to the building. The renovations to Building 33 included new vinyl siding, renovation of the stairways and decks, pylon repairs, and other capital repairs and renovations. Therefore, under the Unit Ownership Act and the amended Declaration, these common areas, which by definition belong to all the unit owners, must be assessed uniformly against all Starboard members according to their *pro rata* share. The trial court was correct in concluding that petitioner's assessment against respondents' unit for the Building 33 renovations was unlawful in that it was not computed in accordance with respondents' percentage undivided interest in the common areas and facilities, as required by the Unit Ownership Act and the amended Declaration.

However, under the Articles, exterior windows and doors are not common areas. *See* Article III.A ("All exterior doors, window frames, panes and screens shall be part of the respective Condominium Units[.]"). Therefore, under the Unit Ownership Act and the amended Declaration, the improvements to Building 33's exterior windows and doors were not common area improvements for the benefit of all Starboard unit owners. The exterior windows and doors were "exclusively" for the benefit of the unit owners in Building 33. As a result, petitioner had the authority to assess the cost of the windows and doors for Building 33 solely against the unit owners in Building 33 "in

such proportion as may be determined by the Board of Directors of [Starboard]." Article XVI.

The court dismissed the foreclosure action without making separate findings or conclusions for the renovations for the windows and doors that exclusively benefitted the unit owners of Building 33 and the portions of the renovations that were for common areas. Therefore, the trial court's 2009 order dismissing petitioner's action with prejudice is vacated and remanded. Consequently, petitioner must perform a new assessment. The assessment will separate respondents' windows and doors that exclusively benefitted the unit owners of Building 33 from the portion of the renovations that were for the common areas and facilities.

## IV. ATTORNEY'S FEES

[2] Subsequent to the Unit Ownership Act, our General Assembly enacted the North Carolina Condominium Act ("the Condominium Act"), N.C. Gen. Stat. § 47C-1-101 *et seq*. As a general rule, the Condominium Act applies prospectively "to all condominiums created . . . after October 1, 1986." N.C. Gen. Stat. § 47C-1-102 (2007).

> The Condominium Act also expressly lists, however, a number of sections which are to be retroactively applied to condominiums created prior to 1 October 1986. One of these provisions, G.S. 47C-4-117, expressly authorizes the recovery of attorney's fees and provides in pertinent part: "If a declarant or any other person subject to this chapter fails to comply with any provision hereof or any provision of the declaration or bylaws, any person or class of person adversely affected by that failure has a claim for appropriate relief. The court may award reasonable attorney's fees to the prevailing party." G.S. 47C-4-117 (1986). This statute is specific authority contained within the very Chapter that currently governs in part the operation of [petitioner].

*Brookwood Unit Ownership Assn. v. Delon*, 124 N.C. App. 446, 448-49, 477 S.E.2d 225, 226 (1996).

> It is left to the sound discretion of the trial court whether attorney fees will be granted. To show an abuse of discretion, [petitioner] must prove that the trial court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.

*Rosenstadt v. Queens Towers Homeowners' Ass'n,* 177 N.C. App. 273, 276, 628 S.E.2d 431, 433 (2006).

> "The issue of jurisdiction over the subject matter of an action may be raised at any time during the proceedings, including on appeal. This Court is required to dismiss an appeal *ex mero motu* when it determines the lower court was without jurisdiction to decide the issues." *McClure v. County of Jackson,* 185 N.C. App. 462, 469, 648 S.E.2d 546, 550 (2007) (internal citations omitted).

> In *McClure,* this Court held that a trial court lacked subject matter jurisdiction under N.C. Gen. Stat. § 1-294 (2007) to enter an order awarding attorneys' fees and costs after notice of appeal had been filed as to the underlying judgment. *McClure,* 185 N.C. App. at 471, 648 S.E.2d at 552. As *McClure* acknowledged, and prior decisions of this Court had held, if an award of attorneys' fees is the result of a party's prevailing as to the underlying judgment, then the issue of attorneys' fees cannot be deemed a "matter included in the action and not affected by the judgment appealed from," N.C. Gen. Stat. § 1-294, and, therefore, the trial court lacks jurisdiction to enter an order awarding attorneys' fees following appeal of the judgment. *See McClure,* 185 N.C. App. at 471, 648 S.E.2d at 551 ("When, as in the instant case, the award of attorney's fees was based upon the plaintiff being the 'prevailing party' in the proceedings, the exception set forth in N.C. Gen. Stat. § 1-294 is not applicable."); *Gibbons v. Cole,* 132 N.C. App. 777, 782, 513 S.E.2d 834, 837 (1999) ("Here, the trial court's decision to award attorneys fees was clearly affected by the outcome of the judgment from which plaintiffs appealed."); *Brooks v. Giesey,* 106 N.C. App. 586, 590-91, 418 S.E.2d 236, 238 (holding that when "a statute such as section 6-21.5, which contains a 'prevailing party' requirement," is the basis for award of attorneys' fees, trial court "is divested of jurisdiction" over request for attorneys' fees by appeal of judgment), *disc. review allowed, disc. review on additional issues denied,* 332 N.C. 664, 424 S.E.2d 904 (1992), *aff'd,* 334 N.C. 303, 432 S.E.2d 339 (1993).

*Swink v. Weintraub,* 195 N.C. App. 133, 159-60, 672 S.E.2d 53, 70 (2009).

In the instant case, the basis for the award of attorney's fees was N.C. Gen. Stat. § 47C-4-117, which provides in pertinent part:

> If a declarant or any other person subject to this chapter fails to comply with any provision hereof or any provision of the declara-

tion or bylaws, any person or class of person adversely affected by that failure has a claim for appropriate relief. The court may award reasonable attorney's fees to the prevailing party.

N.C. Gen. Stat. § 47C-4-117. Therefore, an award of attorney's fees "is directly dependent upon whether the judgment is sustained on appeal." *Swink*, 195 N.C. App. at 160, 672 S.E.2d at 70. Accordingly, a trial court lacks jurisdiction to enter an award of attorney's fees under N.C. Gen. Stat. § 47C-4-117 once notice of appeal has been filed as to the judgment. *See id.*

In the instant case, the 2009 Order was entered 11 December 2009. Petitioner filed notice of appeal from that order on 6 January 2010. The trial court entered its order awarding attorney's fees on 21 May 2010. Since petitioner had already appealed from the 2009 Order, the trial court lacked jurisdiction under N.C. Gen. Stat. § 1-294 to enter the order awarding attorney's fees. We note that the 2009 Order stated, "The Respondents [sic] request for attorney's fees pursuant to Chapter 47C of the North Carolina General Statutes is deferred for hearing at a later date." "This Court in *McClure*, however, held that such a 'reservation' of an issue was not sufficient to permit the trial court to subsequently enter an order on the issue, because '[i]t is fundamental that a court cannot create jurisdiction where none exists.' " *Swink*, 195 N.C. App. at 160, 672 S.E.2d at 70 (quoting *McClure*, 185 N.C. App. at 471, 648 S.E.2d at 551).

Respondents may or may not have a claim for attorney's fees under N.C. Gen. Stat. § 47C-4-117 (2009). However, since the 2010 order awarding attorney's fees is a matter of jurisdiction, we must vacate and remand the 2010 Order.

> As this Court suggested in *McClure*, "the better practice is for the trial court to defer entry of the written judgment until after a ruling is made on the issue of attorney's fees . . ., and incorporate all of its rulings into a single, written judgment. This will result in only one appeal, from one judgment, incorporating all issues in the case."

*Id.* at 160, 672 S.E.2d at 71 (quoting *McClure*, 185 N.C. App. at 471, 648 S.E.2d at 551-52.

## V. CONCLUSION

The trial court's orders dismissing petitioner's action with prejudice and awarding attorney's fees are vacated and remanded for further proceedings not inconsistent with this opinion.

IN RE FORECLOSURE OF JOHNSON

[212 N.C. App. 535 (2011)]

Vacated and remanded.

Judge ELMORE concurs.

Judge HUNTER, Robert C., concurring in part and dissenting in part by separate opinion.

HUNTER, Robert C., Judge, concurring in part and dissenting in part.

I agree with the majority's conclusion that this case must be vacated and remanded to the trial court for a proper determination regarding the costs of those renovations which were "exclusively" for the benefit of the condominium unit owned by respondents Jeffrey J. Johnson, Donna N. Johnson, Gary Proffit, and Jo Proffit. I likewise concur in vacating the trial court's order awarding attorney's fees to respondents due to the lack of jurisdiction to enter such an order. I disagree, however, with the majority's holding that the trial court correctly concluded that petitioner Starboard Association, Inc.'s assessment was "unlawful" because it was not uniform and not levied on a *pro rata* basis. Consequently, I respectfully dissent.

Starboard filed this action to foreclose on the claims of lien asserted against respondents ownership interest in the condominium unit located in Building 33 of the Starboard by the Sea condominium complex in Ocean Isle, North Carolina. The foreclosure proceedings were initiated under N.C. Gen. Stat. § 45-21.16 (2009) based on respondents' alleged "failure to timely pay assessments and other charges levied by [Starboard]."

According to N.C. Gen. Stat. § 45-21.16(d), "there are only four issues before the clerk at a foreclosure hearing: [1] the existence of a valid debt of which the party seeking to foreclose is the holder, [2] the existence of default, [3] the trustee's right to foreclose, and [4] the sufficiency of notice to the record owners of the hearing." *In re Foreclosure of Helms*, 55 N.C. App. 68, 71, 284 S.E.2d 553, 555 (1981), *disc. review denied*, 305 N.C. 300, 291 S.E.2d 149 (1982); *accord In re Foreclosure of Brown*, 156 N.C. App. 477, 489, 577 S.E.2d 398, 406 (2003) ("In a foreclosure proceeding, the [petitioner] bears the burden of proving that there was a valid debt, default, right to foreclose under power of sale, and notice."). " 'On appeal from a determination by the clerk that the trustee is authorized to proceed, the judge of the district or superior court having jurisdiction is limited to determining [*de novo*] the same four issues resolved by the clerk.' " *In re Adams*, —— N.C. App. ——, ——, 693 S.E.2d 705, 709 (2010) (quoting *In re*

**IN RE FORECLOSURE OF JOHNSON**

[212 N.C. App. 535 (2011)]

*Foreclosure of Burgess,* 47 N.C. App. 599, 603, 267 S.E.2d 915, 918, *appeal dismissed,* 301 N.C. 90, —— S.E.2d —— (1980)).

After this matter was transferred to superior court from the clerk of court, the court conducted a bench trial where, at the close of Starboard's evidence, it granted respondents' motion for involuntary dismissal pursuant to Rule 41(b), ruling that Starboard had failed to establish the existence of a valid debt under N.C. Gen. Stat. § 45-21.16(d)'s first prong. With respect to the validity of the debt, the trial court found that in 2005, Starboard contracted for the renovation of Buildings 1 through 32, but not Building 33; that Starboard imposed a special assessment against the owners of the units in Buildings 1 through 32; that in 2007, Starboard contracted for the repair and renovation of Building 33; that Starboard levied a special assessment against the unit owners of Building 33, including respondents, in the amount of $54,000.00 per unit; that the total cost of the renovations to Buildings 1 through 33 was $5,074,000.00; and, that "applying the Respondent's [sic] common area percentage ownership interest[] to this total would have resulted in an assessment against Respondents of $53,865.54, just $134.46 less than the actual assessment against Respondents for the Building 33 renovations alone." Based on these findings, the trial court concluded:

> 2. The assessment by the Board of Directors of Starboard against the Respondents' unit for the Building 33 renovations was unlawful in that it was not computed in accordance with Respondent's [sic] percentage undivided interest in the common areas and facilities, as required by § 47A-6 and 47A-12 of the N.C. Unit Ownership Act, Chapter 47A of the North Carolina General Statutes, and the Declaration of Condominium for Starboard By The Sea.
>
> 3. The Board of Directors did not have the authority to assess the cost of renovations for Building 33 solely against the units located in Building 33, despite the fact that Respondents and other owner[s] of units located in Building 33 requested such renovations.
>
> [4].The alleged debt which forms the basis for the claim of lien and foreclosure of the Petitioner against Respondents' unit is therefore invalid.

The trial court, consequently, dismissed with prejudice Starboard's foreclosure action.

In concluding that the debt based on Starboard's claim of lien was invalid, the trial court determined, and the majority agrees, that Starboard violated N.C. Gen. Stat. § 47A-12 (2009) and Article XXIII of the amended Declaration of Condominium in that the challenged assessment was not uniform and was not levied on a *pro rata* basis. The statute provides in pertinent part:

> The unit owners are bound to contribute pro rata, in the percentages computed according to G.S. 47A-6 of this Article, toward the expenses of administration and of maintenance and repair of the general common areas and facilities and, in proper cases of the limited common areas and facilities, of the building and toward any other expense lawfully agreed upon. No unit owner may exempt himself from contributing toward such expense by waiver of the use or enjoyment of the common areas and facilities or by abandonment of the unit belonging to him.

N.C. Gen. Stat. § 47A-12. Section A of Art. XXIII of the Declaration provides in pertinent part:

> All assessments levied against the Unit Owners and their Condominium Units shall be uniform and, unless specifically otherwise provided for in this Declaration of Condominium, all assessments made by the Association shall be in such an amount that any assessment levied against a Unit Owner and his Condominium Unit shall bear the same ratio to the total assessment made against all Unit Owners and their Condominium Units as the undivided interest in Common Property appurtenant to each Condominium bears to the total undivided interest in Common Property appurtenant to all Condominium Units.

Respondents argued at trial, and the majority appears to agree, that respondents are not obligated to pay for any of the renovations (except for the "exclusive" benefit renovations) because the costs of both phases of the renovations were not aggregated and apportioned *pro rata* in a single, uniform assessment of all unit owners at the conclusion of all the work, but rather each unit owner was assessed piecemeal at the conclusion of the phase of the renovations affecting the owner's unit. Neither § 47A-12 nor Declaration Art. XXIII, Sec. A mandate such a severe result. Notably, both § 47A-12 and the declaration focus on the ultimate outcome of the assessment process, not the process itself. N.C. Gen. Stat. § 47A-12 only requires unit owners to *"contribute* pro rata" according to their calculated share; it does not impose any restrictions on owners' associations regarding the

**IN RE FORECLOSURE OF JOHNSON**

[212 N.C. App. 535 (2011)]

sequencing of assessments. (Emphasis added.) Nor does any other provision of the Unit Ownership Act dictate the procedure through which an owners' association may assess unit owners so long as the "work" is "carried out" in compliance with the Act and the association's declaration. N.C. Gen. Stat. § 47A-6. Similarly, Sec. A, Art. XXIII of Starboard's Declaration merely requires "uniform" assessments levied in accordance with the specified ratio.

Here, Starboard's assessment was clearly uniform in that the record indicates that all unit owners were assessed. And each unit owner was ultimately assessed on a *pro rata* basis. To be candid, as the trial court found and Starboard concedes, Starboard miscalculated respondents' assessment by $134.46. The majority appears to hold, however, that this minor discrepancy ($54,000.00 versus $53,865.54) warrants finding the entire assessment void. Our Supreme Court's reasoning in *Dunes South Homeowners Assn. v. First Flight Builders*, 341 N.C. 125, 459 S.E.2d 477 (1995), one of the few appellate decisions dealing with the Unit Ownership Act, does not support the majority's holding. In *Dunes South Homeowners Assn.*, 341 N.C. at 130, 459 S.E.2d at 480, the Court held that a condominium developer, as a unit owner, could not "unilaterally exempt itself from the payment of its pro rata share of the maintenance expenses for the common areas" under § 47A-12. As the Court noted, the overarching goal of Unit Ownership Act is to "ensure the orderly, reliable and fair government of condominium projects and to protect each owner's interest in his or her own unit as well as the common areas and facilities." *Id.* at 130, 459 S.E.2d at 479. To that end, the Court concluded that the statute was intended to be a shield to "protect unit owners from shouldering a disproportionate share of the maintenance expenses for common areas" not a sword to allow unit owners to escape paying their *pro rata* share of community expenses. *Id.* at 130, 459 S.E.2d at 479. Yet, to borrow *Dunes South Homeowners Assn.'s* words, "[t]his is exactly what [respondents] attempted to do." *Id.* at 130-31, 459 S.E.2d at 480.

In the end, all 33 buildings were renovated and each unit owner was assessed approximately their *pro rata* share of the costs of those renovations. The fact that the amount of respondents' assessment was incorrectly calculated does not require invalidating the entire debt on the assessment. Rather, as this Court has held, N.C. Gen. Stat. § 45-21.16(d) "permit[s] the clerk to find a valid debt of which the party seeking to foreclose is the holder if there is competent evidence that the party seeking to foreclose is the holder of some valid debt,

*irrespective of the exact amount owed." Burgess,* 47 N.C. App. at 603, 267 S.E.2d at 918 (citation and internal quotation marks omitted) (emphasis added).

The $134.46 difference between respondents' actual assessment and the amount their assessment would have been if Starboard had aggregated the renovation costs on all 33 buildings before levying the assessments underscores the illogic of respondents' argument and the majority's holding. The per unit expense of the renovations of all 33 buildings was substantially the same—approximately $54,000.00— irrespective of whether the assessment based on that per unit expense was levied at the end of the first phase of the renovations or at the end of all the renovations. Neither § 47A-12 nor *Dunes South Homeowners Assn.* mandate hyper-technical compliance at the expense of "ensur[ing] the orderly, reliable and *fair* government of condominium projects . . . ." *Id.* at 130, 459 S.E.2d at 479 (emphasis added).

Moreover, despite the majority's reliance on *Dunes South Homeowners Assn.* for the proposition that § 47A-12 is "designed to protect unit owners from shouldering a *disproportionate share* of the maintenance expenses for common areas," 341 N.C. at 130, 459 S.E.2d at 479-80 (emphasis added), that is precisely the result dictated by the majority's holding. Because the majority affirms the trial court's dismissal of Starboard's foreclosure action against respondents, all the other condominium unit owners will necessarily be forced to "shoulder[]" the cost of respondents unpaid assessment. This makes no sense and clearly conflicts with the legislative intent behind § 47A-12. Consequently, I would hold that the trial court erred in concluding that the challenged assessment was unlawful, reverse the trial court's order dismissing the foreclosure action, and remand the case for further proceedings in accordance with N.C. Gen. Stat. § 45-21.16.

Furthermore, in simply concluding that the assessment was "unlawful" under the Unit Ownership Act and Starboard's Declaration, the majority fails to address Starboard's independent argument that the trial court erred in determining that Starboard could not assess the units located in Building 33—including respondents' unit—for the renovations done to that building "despite the fact that Respondents and other owner[s] of units located in Building 33 requested such renovations." This Court has held that assessments may be imposed under an implied contract theory where the governing owners' association declaration does not provide for the assess-

ments. *See Miles v. Carolina Forest Ass'n*, 141 N.C. App. 707, 714, 541 S.E.2d 739, 742 (2001) (holding invalid extension of declaration which authorized assessments against owners in subdivision, but remanding case for "trial court to address whether all of the plaintiffs have impliedly agreed to pay for maintenance, upkeep and operation of the roads, common areas and recreational facilities within the subdivision, and if so, in what amount"). Generally, " '[a]n implied in law contract will . . . lie wherever one man has been enriched or his estate enhanced at another's expense under circumstances that, in equity and good conscience, call for an accounting by the wrongdoer.' " *Id.* at 713, 541 S.E.2d at 742 (quoting *Ellis Jones, Inc. v. Western Waterproofing Co.*, 66 N.C. App. 641, 646, 312 S.E.2d 215, 218 (1984)). Here, however, the trial court simply concluded that because the Declaration did not authorize the assessment based on the renovations of Building 33, Starboard could not assess respondents. As Starboard argued at trial in opposition to respondents' motion for involuntary dismissal, there is evidence in the record that respondents—as well as other Building 33 owners—made a request to Starboard that their building be renovated and that Starboard resultantly incurred the cost of performing the requested renovations. Under *Miles*, there is an issue as to whether a contract implied in law existed between Starboard and respondents for the renovation of Building 33. As the trial court did not address this issue in its order, believing that the Declaration did not authorize the assessment, I would direct the trial court to make findings of fact and conclusions of law on this issue on remand.