**IN RE FORECLOSURE OF JOHNSON**

[366 N.C. 1 (2012)]

IN THE MATTER OF THE PROPOSED FORECLOSURE OF CLAIM OF LIEN FILED AGAINST JEFFREY J. JOHNSON, DONNA N. JOHNSON, GARY PROFFIT, AND JO PROFFIT BY STARBOARD ASSOCIATION, INC., DATED APRIL 30, 2008, RECORDED IN DOCKET NO. 08-M-676 IN THE OFFICE OF THE CLERK OF SUPERIOR COURT FOR BRUNSWICK COUNTY

No. 268A11

(Filed 5 October 2012)

**Associations— homeowners—assessment—lien**

Petitioner's lien and foreclosure claim against respondents' condominium unit was invalid because the lien and claim were based upon an assessment that was not applied uniformly nor calculated in accord with respondents' percentage undivided interest in the common areas and facilities, as required by the Unit Ownership Act and the amended Declaration. The assessment was not a valid debt and the trial court did not err by granting an involuntary dismissal.

Justice MARTIN dissenting.

Justices NEWBY and JACKSON join in this dissenting opinion.

Appeal pursuant to N.C.G.S. § 7A 30(2) from the decision of a divided panel of the Court of Appeals, 212 N.C. App. 535, 714 S.E.2d 169 (2011), vacating and remanding orders entered on 11 December 2009 and 21 May 2010, both by Judge Richard D. Boner in Superior Court, Mecklenburg County. Heard in the Supreme Court on 15 November 2011.

*Sellers, Hinshaw, Ayers, Dortch & Lyons, P.A., by Michelle Price Massingale, for petitioner-appellant.*

*Kenneth T. Davies for respondent-appellees.*

TIMMONS–GOODSON, Justice.

In this case we consider whether the trial court erred in granting a judgment and dismissal in favor of respondents pursuant to Rule 41 of the North Carolina Rules of Civil Procedure, reasoning that petitioner's lien and foreclosure claim against respondents' condominium unit was invalid. We conclude that petitioner's lien and foreclosure claim were based upon an improperly administered assessment and

not a valid debt. Accordingly, we affirm the decision of the Court of Appeals.

## I. Background

Petitioner Starboard Association, Inc. incorporated in 1981 by filing its Articles of Incorporation with the Secretary of State. Its stated purpose is to administer and manage Starboard By The Sea Condominium, a property located in Ocean Isle Beach, North Carolina. The property, which we refer to here as "Starboard," houses 139 residential units in 33 separate buildings. Petitioner is regulated by the Unit Ownership Act, set forth in Chapter 47A of the North Carolina General Statutes. Petitioner is also governed according to its Declaration of Condominium and its By-Laws, both filed with the Brunswick County Register of Deeds.

Petitioner's Declaration has been amended a number of times over the years. The fifth amendment, adopted in 1982 as "Phase V beachfront property," provided for the addition of three condominium units in a single building, Building 33, and provided Starboard with a second swimming pool. Each unit in Building 33 was determined to have a 1.06160 percentage of undivided interest in Starboard's common areas and facilities. After the amendment, petitioner recalculated the individual undivided interests of the other units in the common areas to reflect the market value of each unit in relation to the aggregate market value of all units.

In late 1997 petitioner's general membership amended the By-Laws, authorizing petitioner to make, levy, and collect assessments against members to defray costs, as provided in Article XXIII of the Declaration. In pertinent part, Article XXIII provided "[a]ll assessments levied against the Unit Owners and their Condominium Units shall be uniform." Article XXIII provided further that unless otherwise set forth in the Declaration, all assessments made by petitioner and levied against a unit owner and its condominium unit "shall bear the same ratio to the total assessment made against all Unit Owners and their Condominium Units as the undivided interest in Common Property appurtenant to each Condominium." Article III of the amended By-Laws required petitioner's Board of Directors to adopt a yearly budget to estimate common expenses for the operation, management, and maintenance of the common property.

On 6 August 2004, respondents Jeffrey J. Johnson and Donna N. Johnson, along with Gary A. Proffit and Betty Jo Proffit, acquired

Unit B of Building 33, Phase V, as tenants in common. Two months later, at the annual meeting of petitioner's general membership, an extensive renovation for all of Starboard's buildings, except Building 33, was proposed. The renovation was not approved until the 8 October 2005 annual meeting. The attending members approved the renovation project by a vote of 33 to 29 as a non-binding vote to guide the new Board of Directors. Following the annual meeting, the Board entered into a contract to renovate all the buildings except Building 33 and levied a special assessment against the unit owners of all the buildings except Building 33. The capital renovation project included: (1) replacing the exterior siding, windows, and sliding glass doors; (2) installing new stairways, landings, decks, and wiring; and (3) other repairs.

In early to mid-2006 respondents and the other unit owners in Building 33 requested renovations for Building 33. The Board notified the unit owners in Building 33 to expect renovations "in the near future." Prior to the renovations for Building 33, the Board received three bids, then entered into a contract with Puckett Enterprises, Inc. to renovate Building 33. The renovations included: (1) new vinyl siding, windows, and doors; (2) renovation of the stairways and decks; (3) pylon repairs; and (4) other capital repairs and renovations.

The Board approved a special assessment for the renovations on 8 November 2007 in the amount of $55,000.00 per unit for all unit owners in Building 33. That amount was later lowered to $54,000.00 each. The Board thereafter adopted a unanimous written resolution ratifying the assessment in late 2008. In December 2007 respondents paid $27,000.00 of the assessment under protest. Respondents made no additional payments.

In August 2008 petitioner filed a notice of lien against respondents' unit and initiated foreclosure proceedings under N.C.G.S. Chapter 47C based on respondents' alleged "failure to timely pay assessments and other charges levied by [Starboard]." In response, respondents filed an Objection to Foreclosure of Claim of Lien, contesting petitioner's right to proceed with foreclosure proceedings. Respondents further objected to the validity of the alleged debt that formed the basis of the foreclosure proceeding.

Specifically, respondents asserted that the assessment against them was not uniform and was not included in any annual budget or special assessment budget ratified by the Association, as required by the Articles of Incorporation, the Declaration, the amended By-Laws,

**IN RE FORECLOSURE OF JOHNSON**

[366 N.C. 1 (2012)]

and Chapter 47C of the North Carolina General Statutes. Respondents asked the trial court to dismiss the foreclosure proceeding with prejudice and award respondents reasonable attorney's fees. The trial court transferred the matter from Brunswick County to Superior Court, Mecklenburg County "due to the complexity of the issues."

After an evidentiary hearing on 3 August 2009, the trial court concluded that the assessment violated the Unit Ownership Act and the Declaration. The trial court reasoned that because the assessment was not computed in accordance with respondents' percentage undivided interest in the common areas and facilities, it was unlawful. For this reason, the trial court concluded further that the alleged debt underlying petitioner's claim of lien and resulting foreclosure of respondents' unit were invalid. The trial court entered an order and judgment on 11 December 2009 dismissing petitioner's action with prejudice under Civil Procedure Rule 41 and entered another order on 21 May 2010, awarding respondents reasonable attorney's fees in the amount of $19,780.83. Petitioner appealed both orders.

On 21 June 2011, the Court of Appeals vacated and remanded this matter to the trial court for further proceedings. *In re Foreclosure against Johnson*, 212 N.C. App. 535, 714 S.E.2d 169, 170, 176 (2011). The Court of Appeals majority held that the trial court correctly concluded that petitioner's assessment against respondents' unit for the Building 33 renovations was unlawful, in that it was not uniform, nor was it calculated in accord with respondents' percentage undivided interest in the common areas and facilities, as required by the Unit Ownership Act and the amended Declaration. *Id.* at ——, 714 S.E.2d at 174. Nevertheless, the Court of Appeals concluded further that petitioner did have the authority to assess against respondents the costs of those renovations which were "exclusively" for the benefit of the condominium unit owned by respondents. *Id.* at ——, 714 S.E.2d at 169. Finally, the Court of Appeals vacated the trial court's order awarding attorney's fees to respondents because that court lacked jurisdiction to enter such an order. *Id.* at——, 714 S.E.2d at 175-76. One member of the panel dissented in part, however, disagreeing with the majority's holding that the trial court correctly concluded that petitioner's assessment was "unlawful" because it was not uniform and not levied on a pro rata basis. *Id.* at ——, 714 S.E.2d at 176 (Hunter, Robert C., J., concurring in part and dissenting in part). Petitioner brings the appeal to us based upon this dissent.

## II. Analysis

Petitioner argues that because its assessment was lawful, uniform, and levied pro rata, the trial court erred in dismissing its lien foreclosure action under North Carolina Rule of Civil Procedure 41. We disagree.

"The proper standard of review for a motion for an involuntary dismissal under Rule 41 is (1) whether the findings of fact by the trial court are supported by competent evidence, and (2) whether the findings of fact support the trial court's conclusions of law and its judgment." *Dean v. Hill*, 171 N.C. App. 479, 483, 615 S.E.2d 699, 701 (2005) (citing *McNeely v. S. Ry. Co.*, 19 N.C. App. 502, 505, 199 S.E.2d 164, 167, cert. denied, 284 N.C. 425, 200 S.E.2d 660 (1973)). Absent objection, factual findings are presumed supported by competent evidence and are binding on appeal, *Dealers Specialties, Inc. v. Neighborhood Hous. Servs., Inc.*, 305 N.C. 633, 635-36, 291 S.E.2d 137, 139 (1982), while conclusions of law are reviewable de novo on appeal, *Riley v. Ken Wilson Ford, Inc.*, 109 N.C App. 163, 168, 426 S.E.2d 717, 720 (1993). Neither party has lodged an objection to any of the trial court's twenty-seven findings of fact in the 2009 order. These facts are thus binding on appeal.

By executing and recording a declaration of unit ownership, petitioner subjected its condominium project to the provisions of Chapter 47A of the General Statutes. *See Dunes S. Homeowners Ass'n v. First Flight Builders, Inc.*, 341 N.C. 125, 129, 459 S.E.2d 477, 479 (1995).[1] Petitioner's claims are therefore governed by the Unit Ownership Act, N.C.G.S. §§ 47A-1 to -28. Section 47A-9 of the Act addresses the handling of maintenance, repairs, and improvements at facilities such as Starboard and provides that these matters are governed by the Act and the bylaws. N.C.G.S. § 47A-9 (2011) ("The necessary work of maintenance, repair, and replacement of the common areas and facilities and the making of any additions or improvements thereto shall be carried out only as provided herein and in the bylaws.").

The Act also requires unit owners to contribute pro rata towards the administration, maintenance, and repair of common areas and facilities, providing that:

---

1. This case is governed by the provisions of Chapter 47A of the General Statutes, rather than Chapter 47C, because Chapter 47A applies to all condominiums created within this state before 1 October 1986. *Dunes S. Homeowners Ass'n*, 341 N.C. at 127 n.1, 459 S.E.2d at 477 n.1.

## IN RE FORECLOSURE OF JOHNSON

[366 N.C. 1 (2012)]

> The unit owners are bound to contribute pro rata, in the percentages computed according to G.S. 47A-6 of this Article, toward the expenses of administration and of maintenance and repair of the general common areas and facilities and, in proper cases of the limited common areas and facilities, of the building and toward any other expense lawfully agreed upon.

*Id.* § 47A-12 (2011). Section 47A-12 is designed "to ensure the orderly, reliable and fair government of condominium projects and to protect each owner's interest in his or her own unit as well as the common areas and facilities." *Dunes S. Homeowners Ass'n*, 341 N.C. at 130, 459 S.E.2d at 479. To this end, we have emphasized that "the provisions of section 47A-12 are designed to protect unit owners from shouldering a disproportionate share of the maintenance expenses for common areas." *Id.*

Section A of Article XXIII of the Declaration, as incorporated into the amended By-Laws, also speaks to the administration, maintenance, and repair of common areas and facilities, providing in pertinent part:

> All assessments levied against the Unit Owners and their Condominium Units shall be uniform and, unless specifically otherwise provided for in this Declaration of Condominium, all assessments made by the Association shall be in such an amount that any assessment levied against a Unit Owner and his Condominium Unit shall bear the same ratio to the total assessment made against all Unit Owners and their Condominium Units as the undivided interest in Common Property appurtenant to each Condominium bears to the total undivided interest in Common Property appurtenant to all Condominium Units.

Accordingly, Article XXIII provides that assessments levied against unit owners must be "uniform" and "bear the same ratio to the total assessment made against all Unit Owners and their Condominium Units as the undivided interest in Common Property appurtenant . . . to all Condominium Units." Thus, both the Unit Ownership Act and Article XXIII of the amended Declaration require unit owners to uniformly contribute, pro rata, based on the percentage of their respective undivided interests in the common area and facilities, towards the expenses of the administration and maintenance and repair of the general common areas and facilities, and, in proper cases, of the limited common areas and facilities.

Here we agree with the trial court and the majority of the Court of Appeals that the 2007 special assessment was invalid because it was neither uniform, nor levied on a pro rata basis. Put differently, the 2007 assessment was not assessed against all members of the Association according to their pro rata share as required by the Unit Ownership Act and Article XXIII of the amended Declaration. In reaching this conclusion, it is critical to note that no party challenges the findings of fact in the trial court's Order of Dismissal and Judgment. The trial judge found that following the 2005 annual association meeting, the petitioner's board levied a special assessment for the renovation of thirty-two of Starboard's buildings, but not Building 33.[2] At that time owners of the units in Buildings 1 through 32 were levied a special assessment for those renovations. Then in 2007, roughly two years later, the Board ratified a second assessment against the owners of three units in Building 33 effective 8 November 2007 in the sum of $162,000.00, or $54,000.00 per unit in Building 33.[3] The 2007 assessment was for extensive repairs and renovations to the exterior of Building 33, including new vinyl siding, pylon repairs, new windows and doors, renovation of the stairways and decks, and other capital repairs and renovations.

Thus, according to the uncontested findings of fact, there were two assessments here, rather than one, and the assessments were

2. The trial court found as fact in its Order of Dismissal and Judgment that:

19. On 8 October 2005, the annual meeting of the Starboard By the Sea Association was held. A re-vote was taken on the original renovation package with the understanding that cost would change, and the attending members approved the renovation project by a vote of 33 to 29, as a non-binding vote to guide the new Board of Directors.

20. Following the annual meeting, the Board of Directors entered into a contract for the renovations of all the buildings except Building 33, and levied a special assessment against the unit owners of all the buildings except Building 33 unit owners.

3. The trial court found as fact in its Order of Dismissal and Judgment that:

23. Sometime in the fall of 2007, the Board of Directors of Starboard approved a construction contract with Puckett Enterprises, Inc[.] for renovation of Building 33, to include new vinyl siding, pylon repairs, new windows and doors, renovation of the stairways and decks, and other capital repairs and renovations. The Board also approved a special assessment to be levied against the owners of the three units in Building 33, in the amount of fifty five thousand dollars ($55,000.00) per unit on or about 8 November 2007. Although there are no written meeting minutes reflecting the board's approval of the alleged assessment on or about November 8, 2007, the Board did adopt a unanimous written resolution ratifying the assessment on or about October 31, 2008, in accordance with N.C.G.S. §55A-8-21.

**IN RE FORECLOSURE OF JOHNSON**

[366 N.C. 1 (2012)]

conducted a few years apart (2005 and 2007, respectively). The 2007 special assessment, which was levied against only owners in Building 33, was not uniformly assessed against all members of the Association according to their pro rata share as required by the Unit Ownership Act and Article XXIII of the amended Declaration.

We do not find petitioner's arguments to the contrary convincing. Petitioner's contentions are essentially twofold. First, petitioner argues that both the 2005 and 2007 assessments were actually just piecemeal phases of a single larger assessment that took place over two years. This single assessment was ostensibly levied uniformly, albeit with a $134.00 difference, against the owners of Buildings 1 through 33, including respondents. Consequently, petitioner concludes, the trial court erred in concluding that the debt upon which petitioner sought to foreclose was invalid. Were it true, this would be a strong argument. The problem with petitioner's position, however, is that the trial court found as fact that there were two separate assessments. As explained, according to the Act and Starboard's own amended Declaration and amended By-Laws, **each** assessment must be levied pro rata and uniformly upon **each** owner. Such was not the case here.

Second, petitioner contends that there was an implied contract between respondents and it for the assessments in question. Such a claim is generally cognizable under North Carolina law. *See, e.g., James River Equip., Inc. v. Tharpe's Excavating, Inc.*, 179 N.C. App. 336, 346, 634 S.E.2d 548, 556 (2006) ("An implied contract rests on the equitable principle that one should not be allowed to enrich himself unjustly at the expense of another and on the principle that what one ought to do, the law supposes him to have promised to do." (citation and quotation marks omitted)). Nonetheless, we express no opinion on the merits of such a claim here. Even assuming such a claim could be properly pleaded here, the matter was never pleaded in this proceeding as required by Rule 8 of the North Carolina Rules of Civil Procedure, nor was the issue raised at the trial court. We therefore decline to consider the matter further. *See, e.g., Pue v. Hood*, 222 N.C. 310, 313, 22 S.E.2d 896, 898 (1942); *Brown v. Woodrun Ass'n*, 157 N.C. App. 121, 126, 577 S.E.2d 708, 712 (2003) (declining to consider an implied contract theory of recovery for the first time on appeal, noting that "the possible existence of an implied contract between the parties raises a separate issue that can be determined in a separate action").

## III. Conclusion

The trial court's findings of fact support its conclusions of law that the assessment levied against respondents was invalid because it violated N.C.G.S. § 47A-12 and Article XXIII of the amended Declaration. Consequently, we affirm the decision of the Court of Appeals that petitioner's assessment against respondents' unit for the Building 33 renovations was unlawful, because it was not applied uniformly nor calculated in accord with respondents' percentage undivided interest in the common areas and facilities, as required by the Unit Ownership Act and the amended Declaration. The remaining issues addressed by the Court of Appeals are not properly before this Court and its decision as to those matters remains undisturbed. This case is remanded to the Court of Appeals for further remand to the trial court for additional proceedings not inconsistent with this opinion.

AFFIRMED AND REMANDED.

Justice MARTIN dissenting.

The majority decision relieves respondents of the statutory duty to contribute pro rata toward the expenses for renovating their condominium common areas. This decision contravenes the legislative purpose behind the enactment of N.C.G.S. § 47A-12, which requires all unit owners to pay their pro rata share of common expenses. This outcome-determinative provision states succinctly: "[U]nit owners are bound to contribute pro rata . . . . No unit owner may exempt himself from contributing toward such expense . . . ." N.C.G.S. § 47A-12 (2011). In reversing an assessment imposed to recoup expenses for common area renovations, the majority unjustifiably excuses respondents from contributing their pro rata share. Respondents' neighboring owners and the Starboard By the Sea Condominium (Starboard) complex are thus left to bear respondents' lawful burden.

Respondents own a unit in Building 33 and a 1.06160 percent undivided interest in Starboard's common areas and facilities. The Starboard Association approved renovations to Starboard's entire complex, except Building 33, on 8 October 2005. These renovations improved common areas and facilities in which respondents have an ownership interest. All unit owners, except for those in Building 33, were charged for the renovations at that time. Respondents did not object to this omission. When respondents and the other Building 33 unit owners subsequently requested that their building be renovated,

**IN RE FORECLOSURE OF JOHNSON**

[366 N.C. 1 (2012)]

they were told renovations to their building would begin "in the near future." The board approved renovations to respondents' building in November 2007, two years after it approved renovations to the other buildings. The total cost of all the renovations to the Starboard complex was $5,074,000. Divided among all unit owners on a pro rata basis, as specified by both the Unit Ownership Act (Act) and Starboard's Declaration of Condominium, the amount owed by respondents for the renovations to the Starboard complex was $53,865.54.

Starboard did not charge respondents $53,865.54 when it began renovating the other buildings in the complex. Instead, Starboard waited until renovations began on respondents' building and charged them $54,000.00—$134.46 more than they owed as owners of a unit, an overcharge of about .25 percent. Respondents paid $27,000.00 of the amount owed, but then refused to pay the balance. Because of respondents' refusal, Starboard paid for the remainder of the renovation contract and initiated foreclosure proceedings against respondents' unit to recoup the unpaid assessment

"[T]he provisions of section 47A-12 are designed to protect unit owners from shouldering a disproportionate share of the maintenance expenses for common areas when other unit owners . . . attempt to unilaterally exempt themselves from contributing their pro rata share of maintenance expenses." *Dunes S. Homeowners Ass'n v. First Flight Builders, Inc.*, 341 N.C. 125, 130, 459 S.E.2d 477, 479-80 (1995).

The majority apparently believes that section 47A-12 mandates a specific procedure for assessments. This construction, however, is not supported by the language of the statute. Section 47A-12 is concerned not with procedure but with outcome, and imposes an obligation on all unit owners to pay their pro rata share of expenses for maintenance and repair of common areas: "[U]nit owners are bound to contribute pro rata . . . . No unit owner may exempt himself from contributing toward such expense . . . ." N.C.G.S. § 47A-12. Significantly, the Act requires that the association's bylaws specify the "[m]anner of collecting from the unit owners their share of the common expenses." N.C.G.S. § 47A-19(4) (2011). Section 47A-12 does not include any procedural requirements regarding the timing or manner of assessments. Instead, the statute incorporates guidelines designed to ensure proportional contributions by unit owners. Starboard's Declaration similarly states that assessments against unit owners shall be uniform and in the same ratio as the ownership interest.

IN RE FORECLOSURE OF JOHNSON

[366 N.C. 1 (2012)]

In addition to not providing a specific assessment *procedure*, the Act does not provide a remedy for an improperly calculated assessment. Allowing respondents to avoid paying the correct amount of $53,865.54, as the majority does here, allows them to avoid their statutory duty to contribute pro rata for common area expenses under section 47A-12. This result defies the " 'simple logic and obvious fairness that owner-members should not be permitted to demand services for which they can refuse to make payment.' " 6A Patrick J. Rohan, *Real Estate Transactions: Home Owner Associations and Planned Unit Developments* § 9.01, at 9-4 (Matthew Bender & Co. June 2012) [hereinafter Real Estate Transactions] (citation omitted).

Just as the statute does not support the majority decision, neither does our case law. In *Dunes South Homeowners Ass'n* the defendant developer, like respondents in this case, challenged the validity of an assessment and subsequent lien imposed by the homeowners association. 341 N.C. at 128, 459 S.E.2d at 478. Noting "the legislature's intent to ensure the orderly, reliable and fair government of condominium projects," we held that the developer could not escape its statutory duty to pay for its share of the costs of maintaining the complex. *Id.* at 130-31, 459 S.E.2d at 479. Like the developer in *Dunes South*, respondents are not excused from their statutory duty to contribute their pro rata share because of a minor computational error.

Starboard's assessment for renovations was authorized by statute, and its mistaken overcharge of less than one percent does not invalidate the assessment. *See, e.g., Oronoque Shores Condo. Ass'n No. 1 v. Smulley*, 114 Conn. App. 233, 238-41, 968 A.2d 996, 999-1000 (2009) (concluding that a unit owner was not excused from paying a valid assessment simply because of a miscalculation that was later corrected). As long as the outcome of an assessment against unit owners is representative of their ownership percentage, as required by section 47A-12 and Starboard's Declaration, this Court should not exempt respondents from paying their share of the requested renovations. Respondents cannot use the miscalculation to "justify unilaterally withholding or refusing to pay assessments." *Wayne S. Hyatt, Condominium and Homeowner Association Practice: Community Association Law* § 607(a), at 117 (3d ed. 2000). The majority decision to excuse respondents from paying their pro rata share necessarily "forces other owners to carry the burden of these unpaid assessments in addition to their normal assessments." *Real Estate Transactions* § 9.01, at 9-4.

IN RE FORECLOSURE OF JOHNSON

[366 N.C. 1 (2012)]

Finally, the facts of this case do not require the result reached by the majority, which heavily rests on its reading of the trial court's findings of fact. Contrary to the majority assertion that the trial court found "there were two assessments here, rather than one," the trial court made no such explicit finding. Instead, the trial court found:

20. Following the annual meeting, the Board of Directors entered into a contract for the renovations of all the buildings except Building 33, and levied a special assessment against the unit owners of all the buildings except Building 33 unit owners.

. . . .

23. Sometime in the fall of 2007, the Board of Directors of Starboard approved a construction contract . . . for renovation of Building 33 . . . . The Board also approved a special assessment to be levied against the owners of the three units in Building 33 . . . .

The trial court did not find, as the majority suggests, that there were two discrete and unrelated assessments. The renovations to be made under both contracts were substantially similar: new siding, new windows and doors, new stairways and decks, and other improvements. The $54,000.00 charged to respondents was the amount Starboard would have billed them if Starboard had charged all owners for the entire project at the outset, though with a .25 percent discrepancy. These facts tend to show that the assessment levied against the Building 33 unit owners, including respondents, was indeed part of one larger transaction, and that Starboard merely waited to charge the respondents until work began on their building. The facts do not lead to the conclusion that Starboard wrongfully charged respondents, particularly to such an extent that they should be excused from their statutory duty to contribute pro rata under section 47A-12.

N.C.G.S. § 47A-12 requires all unit owners to pay their pro rata share of common expenses. The majority decision ignores the outcome-determinative provisions of section 47A-12 and shields unit owners who were content to allow their neighbors to bear the cost of renovating their common property. This case should be remanded and respondents required to contribute their correct pro rata assessment. Accordingly, I respectfully dissent.

Justices NEWBY and JACKSON join in this dissenting opinion.