ORANGE WATER AND SEWER AUTHORITY v. TOWN OF CARRBORO

No. 8115SC1003

(Filed 7 September 1982)

**Municipal Corporations § 22— fire hydrant rental charges—implied contract**

In an action instituted by plaintiff to recover fire hydrant rental charges in arrears, defendant was not obligated by statute or by written contract to pay for fire protection; however, competent evidence at trial supported the view that an implied agreement existed beween plaintiff and defendant for the provision of, and payment for, fire protection capability and for the reimbursement of the costs of the fire hydrants.

APPEAL by defendant from *Martin, Judge.* Judgment entered 22 May 1981 in Superior Court, ORANGE County. Heard in the Court of Appeals 4 May 1982.

*Claude V. Jones for plaintiff-appellee.*

*Michael B. Brough for defendant-appellant.*

MARTIN (Robert M.), Judge.

Plaintiff initiated this action to recover from defendant $20,124.00 for fire hydrant rental charges in arrears at the time of the complaint, plus additional rental charges which would accrue before trial. The case was tried before a judge. From judgment for the plaintiff, defendant appealed raising questions as to the legal basis for its liability for the fire hydrant rental charges. For the reasons set forth below, we affirm the judgment of Superior Court.

I

The underlying facts of this conflict appear to be undisputed: Plaintiff is a water and sewer utility authority created and existing under the provisions of Chapter 162A of the North Carolina General Statutes. Its governing board consists of nine members, five appointed by the Town of Chapel Hill, two appointed by Orange County, and two appointed by defendant.

In August 1976, plaintiff entered into a contract with defendant whereby defendant agreed to sell and plaintiff agreed to purchase the water and sewer utility systems and properties which had theretofore belonged to and been operated by defendant.[1] The water system conveyed included fire hydrants installed and located within the boundaries of the defendant. The primary purpose of the hydrants was to enable defendant's Fire Department to provide fire fighting services to the citizens of defendant; the hydrants were also used for flushing and cleaning defendant's streets and for fire fighting personnel drills and training.

The Agreement of Sale and Purchase, the contract by which plaintiff bought and defendant sold the systems, contained no specific reference to charges for maintaining and operating the fire hydrants. The agreement did state, however, that:

> The initial rates for water services shall be as set forth in Exhibit F. Such initial rates shall be subject to increase, decrease, and revision in accordance with and pursuant to the Bond Order from time to time and without limitation to the extent that any such increase, decrease, or revision shall be required in order to comply with the covenants contained in the Bond Order with respect to the generation of Revenues or Net Revenues of the Authority and the rates, fees and charges to be levied by the Authority in order to comply with such covenants and further to the extent such increase or decrease or revision shall be deemed necessary or appropriate by the Authority.

Furthermore, plaintiff agreed that, in maintaining the water and sewer systems, it would "charge reasonable rates based on cost of

---

1. Plaintiff also purchased the water and sewer systems of the Town of Chapel Hill and the University of North Carolina, but that fact is only peripherally involved in this lawsuit.

service to all classes of users of the water and sewer system impartially and without discrimination. . . ."

The ordinance and resolution granting plaintiff a sixty-year franchise to conduct a water distribution system within defendant's limits contained an agreement that plaintiff install and maintain, under the supervision of defendant's Department of Public Works and Fire, hydrants for use and at places designated by the defendant.

In January 1977, plaintiff adopted a Bond Order, Section 502 of which stated:

> *No Free Service.* The Authority covenants that there will be no free services rendered by the Water and Sewer System and that all users, including political subdivisions and public bodies (state and federal), will pay therefor at the established rates, fees and charges; provided, however, that water for the prevention and extinguishment of fires and the flushing of streets and water reasonably necessary for the testing of fire hydrants, the practice of municipal firemen and the flushing and testing of components of the Water and Sewer System may be provided by the Authority without charge.

A similar covenant by plaintiff was included in the Bond Prospectus.

When plaintiff assumed control of the water and sewer systems, it established a $5 a month charge on the fire hydrants.[2] This charge was established after review of available past records. Defendant paid the charge until July 1979. At that time, as a result of a rate study by Camp, Dresser and McKee of Boston, the monthly fee was raised to $13.70 per hydrant. The increased charge reflected the cost to plaintiff of providing greater capability necessitated by fire protection services. Later the rate was adjusted, retroactive to July 1979, to $12.00 in order to re-

---

2. In its answer to plaintiff's complaint, defendant admitted that plaintiff had at one time established a "hydrant rental fee" of $5.00 but denied that the fee related to rental or maintenance of the fire hydrants. Defendant's evidence at trial, however, showed that the $5.00 charge, and later adjustments, were hydrant fees designed to pay for additional costs necessitated by plaintiff's provision of fire protection capacity.

flect more accurately the number of hydrants within defendant's territorial limits.

Defendant refused to pay the increased fee or the adjustment.[3] Consequently, plaintiff sued for payment. Defendant counterclaimed alleging that plaintiff was refusing to install hydrants at its request and seeking an order enjoining plaintiff to comply with its agreement to install hydrants.

After hearing the evidence, the trial court found, among other things, the following:

. . . .

(14) When OWASA first began operations after acquiring the water utility system, it adopted an interim rate schedule whereby a charge of $5.00 per month per fire hydrant was made for what was referred to as fire hydrant rental, but what was actually a monthly charge for public fire protection service, i.e., a portion of the increased costs incurred by OWASA in providing water capacity for fire protection service over and above costs incurred in providing water for domestic consumption. Thereafter, OWASA engaged Camp, Dresser & McKee, a nationally known and approved firm of consultants, to make a study of the system and recommend an appropriate schedule of rates, including appropriate charges for fire protection services (expressed as fire hydrant rental charges). Such a study was conducted by the consultants, using accepted methodology and standards, including those of the American Waterworks Association; using available operational cost information; and using operational information as to the relationship between domestic water needs and fire service needs, which information had been developed by Pitometer Associates in a previous study of the system. Camp, Dresser & McKee recommended . . . [a] charge of $13.70 per hydrant per month. This rate was adopted by OWASA to become effective July 1, 1979, but on March 5, 1980, after further consideration and study, the rate was reduced to $12.00 per hydrant per month retroactive to July 1, 1979. Sums over the $12.00 rate which had been col-

3. According to the record, the Town of Chapel Hill and the University of North Carolina continued to pay the fees.

lected were refunded or credited on subsequent bills so that as a practical matter the $13.70 rate was superceded by the $12.00 per month rate. The Court finds that in adopting the rates for fire protection, the governing body of OWASA acted prudently with deliberation and care and gave serious and meaningful study and consideration to the subject, and that the rates so determined and charged for fire protection or fire hydrant rental were determined after taking into consideration the cost of such service and other pertinent factors.

(15) At and prior to the conveyance and transfer of its water utility system to OWASA, the governing body of the Town of Carrboro had been advised and knew that OWASA intended to make a monthly charge in its rate schedule for fire hydrant rental or fire protection service, and actually agreed to pay such charges which at that time would have been $5.00 per month per hydrant.

(16) The Town of Carrboro did pay the monthly fire hydrant charges from February 1977 until June 1979, during which time the rate was $5.00 per month per hydrant; but since the month of June 1979, it has refused to pay said fire hydrant charges.

. . . .

(18) As of the date of the hearing, April, 1981, the total amount of fire hydrant rental or fire protection charges accrued and unpaid by the Town of Carrboro was $33,216.00.
. . .

Among the court's conclusions of law were:

. . . .

(4) Within the legal power possessed by the Town of Carrboro to furnish fire protection is the authority to use the public fire hydrants owned by OWASA upon payment of the reasonable fees and charges established by OWASA, as revised from time to time, for such use.

(5) Section 7 of the Franchise Ordinance obligates OWASA to install and maintain under the supervision of the Department of Public Works and Fire of the Town of Carr-

boro fire hydrants and to locate such fire hydrants at all points designated by the Town. OWASA is not obligated to furnish such service free of charge, rather, OWASA is obligated and empowered to charge the Town of Carrboro for the installation and maintenance of such hydrants.

(6) The Town of Carrboro has no legal authority to use the public fire hydrants owned by OWASA free of charge.

(7) While the Agreement of Sale and Purchase did not specifically use the word "hydrant" in describing the services for which the Town was to pay OWASA, the terms and provisions thereof are broad enough to require the reasonable interpretation which the Court makes that fire hydrant services were understood and agreed to be services to be rendered by OWASA to the Town on a Not for Free basis, and that reasonable charges would be billed by OWASA therefor and paid by the Town on a non-discriminatory basis. Furthermore, in the contract of purchase and sale executed by the Town and OWASA, the Town has agreed (Section 7 Rates) that OWASA may, in accordance with the bond order, establish and revise from time to time its rates for services rendered.

(8) Under G.S. 162A-6(9) and G.S. 162A-9 . . . and the bond order, OWASA has the authority and responsibility to charge those who use its services the costs of providing those services.

(9) The Court further concludes that as long as the Town elects to use such public fire hydrant[s] and fire protection services provided by OWASA, it has a legal obligation to pay reasonable charges therefor.

(10) The furnishing of fire hydrant service by OWASA to the Town of Carrboro free of charge would be in violation of the provisions of Section 502 of the Bond Order, as well as constituting impermissible discrimination against the Town of Chapel Hill and the University of North Carolina at Chapel Hill, in conflict with the provisions of the Sale and Purchase Agreement, which requires OWASA to serve and charge reasonable rates based on cost of service to all classes of users of water and sewer system impartially and without unjust discrimination.

. . . .

(12) The establishment of rates and charges for public fire protection and billing the Town of Carrboro for such service is not an unlawful delegation of authority to OWASA.

Additionally, the court concluded that plaintiff was entitled to $33,216 plus interest. The court ordered recovery of such sum by plaintiff and denied defendant any relief based on its counterclaim.

## II

Under the provisions of Chapter 162A of the General Statutes, water and sewer authorities are authorized to acquire, to lease as lessor, and to operate any water system or part thereof. G.S. 162A-6(5). The term *water system* is defined to include hydrants. G.S. 162A-2(12). Authorities are further empowered to fix, to revise, and to collect "rates, fees and other charges for the use of or for the services and facilities furnished by any system operated by the authority." G.S. 162A-6(9).

By various assignments of error based upon numerous exceptions to the lower court's findings of fact and conclusions of law, defendant makes three related arguments contesting its obligation to pay for the fire protection capability provided by plaintiff. Two of these arguments are that defendant is not obligated (1) by statute or (2) by written contract to pay for the fire protection. With these arguments we agree. While defendant is allowed to provide fire protection as a municipal service, G.S. 160A-291, it is not required by statute to provide such protection or to pay another for the provision of fire protection.

As to express contractual liability, we find none. There is no merit in plaintiff's argument that the Sale and Purchase Agreement is the basis for such liability. The rates to which reference was made in that agreement did not contain fire hydrant fees.

We agree, however, with the trial court's Conclusion 7 which interprets the language of the agreement to be broad enough to imply an agreement by the defendant to make reasonable payment for the hydrants. Competent evidence at the trial supports the view that an implied agreement existed between plaintiff and defendant for the provision of, and payment for, fire protection capability.

An implied contract rests on the equitable principle that one should not be allowed to enrich himself unjustly at the expense of the other and on the principle that what one ought to do, the law supposes him to have promised to do. *Root v. Insurance Co.*, 272 N.C. 580, 158 S.E. 2d 829 (1968). It is apparent from the record that, from its inception, plaintiff intended to maintain the fire hydrants for defendant's use. Equally apparent is that defendant intended to continue its fire protection services by use of the hydrants. The ordinance and resolution of defendant granting plaintiff a sixty-year franchise contained the agreement that plaintiff install and maintain, under defendant's supervision, fire hydrants for defendant's use. The Bond Order adopted by plaintiff was explicit in proscribing free service, and the earlier Agreement of Sale and Purchase made rates subject to the Order. From the minutes of an 11 February 1977 special meeting of defendant's Board of Aldermen, it is clear that defendant knew of the $5.00 per hydrant charge. At the September 1977 meeting of the Board, transfer of money for hydrant rental was approved. Until the rate was increased, defendant paid it without protest.

We feel that under the foregoing circumstances justice and equity require defendant to pay for the cost of providing fire protection capability, and the law implies a promise on defendant's part to do so. Otherwise, defendant will have been unjustly enriched at plaintiff's expense. *See Arcade County Water District v. Arcade Fire District*, 6 Cal. App. 3d 232, 85 Cal. Rptr. 737 (1970); *Riverside, Inc. v. Gulf States Utilities Company*, 289 S.W. 2d 945 (Texas 1956).

Defendant's fourth and final argument, that it was not legally obligated to reimburse plaintiff for costs incurred in purchasing and installing hydrants under the franchise, is rejected on the same basis. While no cost agreement was contained in the franchise, equity requires that we find implied in the agreement reimbursement of the reasonable costs of such hydrants. Defendant could not reasonably have believed that it had blanket authority to direct plaintiff to install hydrants without incurring the reasonable costs of such hydrants. In reaching this conclusion as well as the conclusion that defendant must pay the hydrant charge, it has not been necessary to address the question of the reasonableness of plaintiff's charges. The issue of reasonableness was not raised by defendant on this appeal.

In reviewing the entire record of this case, we find that the court's findings of fact are supported by competent evidence and are, therefore, conclusive on appeal. *Cogdill v. Highway Comm.*, 279 N.C. 313, 182 S.E. 2d 373 (1971). The findings of fact support the conclusions of law, and in those conclusions and in the judgment, we find no error.

Affirmed.

Judges VAUGHN and ARNOLD concur.