IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-451

Filed: 5 January 2016

Mecklenburg County, No. 13 CVS 9897

JEFFREY J. JOHNSON and wife, DONNA N. JOHNSON, and GARY A. PROFFIT and wife, BETTY JO PROFFIT, Plaintiffs,

v.

STARBOARD ASSOCIATION, INC., a North Carolina nonprofit corporation, JOHN MCGUIRT, CHARLES ADAMS, ERIC O'BRIAN, WILLIAM CARTER, HELEN BUNCH, SYD SCHENK, CATHY MOSS, BUD AYERS, BETTY GRAHAM, DARRYL RICE, individually and as members of the Board of Directors of Starboard Association, Inc., and ABBOTT ENTERPRISES, INC., a North Carolina corporation, Defendants.

Appeal by defendants from Judgment for Declaratory Relief entered 26 March 2014 by Judge Jeffrey P. Hunt in Mecklenburg County Superior Court. Heard in the Court of Appeals 5 October 2015.

*Kenneth T. Davies for plaintiffs.*

*VERNIS & BOWLING OF CHARLOTTE, PLLC, by R. Gregory Lewis, for defendants.*

ELMORE, Judge.

On 26 March 2014, the trial court directed verdict for plaintiffs in an action for declaratory judgment, concluding that a special assessment levied against condominium unit owners was invalid. On appeal, now for the second time, defendants argue that (1) the trial court erred in entering judgment in favor of

plaintiffs because Starboard was not required to separate the cost of windows and doors from the cost of common property improvements in its 2010 Special Assessment; (2) the trial court erred in denying defendants' motion for directed verdict on their affirmative defense of implied contract; and (3) the trial court erred in denying defendants' motions to dismiss pursuant to Rules 12(b)(6) and 12(b)(7) of the North Carolina Rules of Civil Procedure. We affirm.

## I. Background

This case arises out of a series of improvements made by Starboard Association, Inc. (Starboard) to its resort condominium property, Starboard by the Sea, located on Ocean Isle in Brunswick County, North Carolina. Starboard was incorporated on 18 June 1981, for the purpose of administering the operation and management of the Starboard by the Sea condominiums, which consist of 139 residential units, located in 33 separate buildings.

Jeffrey J. Johnson, Donna N. Johnson, Gary Proffit, and Betty Jo Proffit (plaintiffs) acquired Unit B of Building 33, as tenants in common, on 6 August 2004. As owners of Unit B, plaintiffs are mandatory members of Starboard and are subject to the Declaration of Condominium and By-laws. Starboard filed its Declaration of Condominium (Original Declaration) and By-laws on 2 July 1981, with the Brunswick County Register of Deeds. Between 1981 and 2003, the Original Declaration was amended several times. Thereafter, on 2 November 2009, Starboard filed the

Amended and Restated Declaration of Condominium for Starboard by the Sea Condominium g/b Starboard Association, Inc. (Restated Declaration) in Brunswick County.

A. The First Special Assessment (Buildings 1–32)

On 9 October 2004, at Starboard's Annual Members Meeting, the members considered an extensive exterior renovation proposal for Buildings 1–32; Building 33 was not considered in the proposal. The members in attendance voted 35 to 1 to authorize a general vote of all unit owners for the renovation project. In March 2005, Starboard mailed ballots to the unit owners soliciting votes for the renovation project, but ultimately failed to garner the 75 percent vote that the Starboard Board of Directors (the Board) believed it needed to move forward with the project.

Starboard took no further action on the proposed renovations until the next Annual Members Meeting, held on 8 October 2005. At the meeting, another vote was taken to move forward with the renovations to Buildings 1–32, and the members in attendance voted 33 to 29 to approve the project. In late 2005, the Board levied a special assessment against the owners of the 126 units in Buildings 1–32 to pay for the renovations (First Assessment). The First Assessment included the costs to purchase, remove, and replace windows and doors for Buildings 1–32. The renovations were completed 31 December 2007.

B. The Second Special Assessment (Building 33)

On 10 August 2007, the Board informed the Building 33 unit owners that it was soliciting bids to renovate Building 33. The renovations were to be funded by a new special assessment levied solely against the three unit owners in Building 33. On 8 November 2007, the Board approved the special assessment in the amount of $55,000.00 per unit, to be assessed individually against each of the Building 33 unit owners (Second Assessment).

While they agreed that maintenance to the common area was overdue, plaintiffs objected to the Second Assessment. In particular, plaintiffs argued that Building 33 unit owners were assessed at $55,000.00 per unit, compared to $38,000.00 for similar units in Buildings 1–32; Building 33 unit owners were given only two months to tender the Second Assessment, while the owners in Buildings 1–32 had five months to tender the First Assessment; multiple repair requests by the Building 33 unit owners had been ignored for several years, causing excess and unnecessary deterioration to the common areas of Building 33; and no vote of the general membership was taken to proceed with the Second Assessment.

Despite plaintiffs' concerns, the Board proceeded with the project, though it did reduce the Second Assessment by $1,000.00 per unit, totaling $54,000.00 assessed against each Building 33 unit owner. The Second Assessment was to be paid in two installments, due 15 December 2007 and 15 February 2008. On 15 December 2007,

plaintiffs paid the first installment, in the amount of $27,000.00, under protest. Plaintiffs refused to pay the second installment.

C. The Foreclosure Proceeding and Appellate Decisions

On 20 August 2008, Starboard initiated foreclosure proceedings against plaintiffs due to their alleged "failure to timely pay assessments and other charges levied by [Starboard]." Plaintiffs objected to the foreclosure on 7 October 2008, challenging the validity of the $30,887.00 debt. The matter was transferred to Brunswick County Superior Court and, by consent, venue was then changed to Mecklenburg County. At the conclusion of the hearing, on 3 August 2009, the trial court determined that the Second Assessment was unlawful because it was not computed on a *pro rata* basis, as required by the Unit Ownership Act and the Original Declaration, as amended. Therefore, the alleged debt which formed the basis of Starboard's claim of lien and the foreclosure proceeding was invalid. The trial court entered an order of dismissal and judgment of the foreclosure proceeding on 11 December 2009, from which Starboard appealed.

On appeal, this Court agreed with the trial court that the Second Assessment was invalid. *In re Johnson (Johnson I)*, 212 N.C. App. 535, 539–43, 714 S.E.2d 169, 172–74 (2011) (Hunter, Robert C., J., dissenting in part). Under the Unit Ownership Act, costs for repairs and maintenance to the general common areas must be assessed against all unit owners *pro rata*. N.C. Gen. Stat. § 47A-12 (2013); *see also* N.C. Gen.

Stat. § 47A-3(2) (2013) (providing default definition of "common areas and facilities"). Each unit owner's *pro rata* contribution is based on the fair market value of the unit in relation to the aggregate fair market value of all units. N.C. Gen. Stat. § 47A-6(a) (2013). The common area renovations to Building 33 included new vinyl siding, renovations to the stairways and decks, pylon repairs, and other capital repairs and renovations. *Johnson I*, 212 N.C. App. at 542, 714 S.E.2d at 174. These renovation costs should have been assessed against all Starboard members according to their *pro rata* share, rather than solely against Building 33 unit owners. *Id.*

However, the Second Assessment also included the cost to renovate exterior windows and doors in Building 33, which are *not* common areas under the Original Declaration, as amended. *Id.* Therefore, Starboard had the authority to assess the cost of the windows and doors solely against the unit owners in Building 33 "in such proportion as may be determined by the Board." *Id.* Because the trial court "dismissed the foreclosure action without making separate findings or conclusions for the renovations for the windows and doors that exclusively benefitted the unit owners of Building 33 and the portions of the renovations that were for common areas," we vacated the trial court's order and remanded. *Id.* Starboard was required to make a new assessment that separated the cost of the windows and doors from the cost to renovate the common areas and facilities. *Id.*

Based upon Judge Robert C. Hunter's dissenting opinion, Starboard appealed to the Supreme Court of North Carolina. The Supreme Court, addressing only whether the assessment was unlawful because it was not uniform, affirmed the Court of Appeals majority:

> The trial court's findings of fact support its conclusions of law that the assessment levied against [plaintiffs] was invalid because it violated N.C.G.S. § 47A-12 and Article XXIII of the amended Declaration. Consequently, we affirm the decision of the Court of Appeals that [Starboard's] assessment against [plaintiffs'] unit for the Building 33 renovations was unlawful, because it was not applied uniformly nor calculated in accord with [plaintiffs'] percentage undivided interest in the common areas and facilities, as required by the Unit Ownership Act and the amended Declaration. The remaining issues addressed by the Court of Appeals are not properly before this Court and its decision as to those matters remains undisturbed.

*In re Johnson (Johnson II)*, 366 N.C. 252, 255, 741 S.E.2d 308, 310 (2012).

On remand, Starboard declined to offer any new evidence in support of its petition for foreclosure. The trial court dismissed Starboard's foreclosure proceeding pursuant to Rule 41(b) of the North Carolina Rules of Civil Procedure. Starboard did not appeal.

D. The 2010 Special Assessment and Instant Litigation

After the foreclosure proceeding, the Board authorized another special assessment in its Resolution dated 30 January 2010 (2010 Special Assessment). The

parties stipulated that the 2010 Special Assessment was levied for the purposes set

forth in the Resolution, which provides, in pertinent part, as follows:

> RESOLVED, that the Board of Directors of the Association, after consideration and in light of [the foreclosure proceeding], has deemed it advisable and in the best interest of the Association, *to reallocate the assessments previously approved, assessed, allocated and paid in accordance with Article XVI of the "Declaration of Condominium,"* . . . which were in the total amounts of $960,000 for three bedroom units in 2005; $352,000 for one bedroom units in 2006; $3,600,000 for three bedroom units in 2006; and $162,000 for ocean front units in 2007–2008.
>
> FURTHER RESOLVED that to avoid any future claims or allegations regarding the previous assessments and their allocations, *the Board resolves to present to the membership a Special Assessment in the total amount of $5,074,000 for 2010* ($960,000 for three bedroom units; $352,000 for one bedroom units; $3,600,000 for three bedroom units; and $162,000 for ocean front units) in accordance with Article XXIII, Section D of the [Restated Declaration] . . . .
>
> . . . .
>
> FURTHER RESOLVED, *this Special Assessment shall be used for the expenses of construction in 2005, 2006 and 2007–2008 . . . .*

(emphasis added.)

The $5,074,000.00 figure represents the total cost to renovate Buildings 1–33.

Furthermore, the parties stipulated that the renovations to Buildings 1–33 included

renovations to the common areas, as well as the replacement of exterior windows and

doors. Thus, the 2010 Special Assessment, while assessed *pro rata* against all unit

owners, was based upon past renovations and was not limited to the cost of renovating the common areas of the condominiums. Rather, to form the 2010 Special Assessment, defendants merely added the costs of the First Assessment to the costs of the Second Assessment—both of which included the cost of windows and doors.

The 2010 Special Assessment was approved in June 2010, though defendants did not take action to collect the costs from plaintiffs until 23 January 2013. Thereafter, plaintiffs filed this lawsuit on 31 May 2013, requesting, *inter alia*, a declaratory judgment that the 2010 Special Assessment was invalid. The matter came to trial on 3 March 2014, in Mecklenburg County Superior Court before the Honorable Jeffrey P. Hunt, and a jury was duly empaneled. The trial court granted defendants' Motion for Severance, Bifurcation, or Separate Trials, pursuant to Rule 42 of the North Carolina Rules of Civil Procedure, and ordered a separate trial on plaintiffs' claim for declaratory judgment.

At the close of the evidence, the parties had stipulated to nearly all of the relevant factual issues and made respective Rule 50 motions for directed verdict. The trial court denied the motions, except for plaintiffs' motion as to the one remaining issue to be submitted to the jury: "Did the 2010 special assessment implemented by defendants apportion windows and doors separately from the common property of the Development?" There being no evidence to the contrary, the trial court answered, "NO," and granted plaintiffs' motion for directed verdict on the issue.

Pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure, the trial court entered Judgment for Declaratory Relief in favor of plaintiffs on 26 March 2014, reserving the parties' remaining claims and defenses for a later hearing and certifying that there was no just reason for delay. *See* N.C. Gen. Stat. § 1A-1, Rule 54(b) (2013) ("[T]he court may enter a final judgment as to one or more but fewer than all of the claims or parties only if there is no just reason for delay and it is so determined in the judgment. Such judgment shall then be subject to review by appeal . . . ."). The trial court concluded as a matter of law that the 2010 Special Assessment was invalid for the following reasons:

1. It failed to apportion doors and windows separately from common areas; and to affix numbers thereto in violation of the "Amended and Restated Declarations of Condominium;" and

2. It failed to comply with the holding of the N.C. Court of Appeals opinion herein cited in finding of fact #6 above [*Johnson I*];

3. Failed to comply with the holdings of the N.C. Supreme Court opinion, herein cited in finding #6 above [*Johnson II*].

Defendants appeal from the judgment.

## II. Discussion

Defendants present three arguments on appeal: (1) the trial court erred in entering judgment in favor of plaintiffs because Starboard was not required to separately apportion the cost of windows and doors from the cost of common property

improvements in its 2010 Special Assessment; (2) the trial court erred in denying defendants' motion for directed verdict on their affirmative defense of implied contract; and (3) the trial court erred in denying defendants' motions to dismiss pursuant to Rules 12(b)(6) and 12(b)(7) on the grounds that plaintiffs lack standing to sue and failed to join a necessary party. We address each of defendants' arguments in turn.

A. The Cost of Windows and Doors in the 2010 Special Assessment

Defendants do not challenge the trial court's entry of directed verdict for plaintiffs on whether the 2010 Special Assessment did, in fact, apportion windows and doors separately from the common property. Rather, without pointing to any specific finding or conclusion in the judgment, defendants argue that the trial court erred "by finding as fact and concluding as a matter of law that Starboard was required to separate windows and doors from common property in its 2010 Special Assessment." Plaintiffs, in response, contend that defendants' argument is barred by collateral estoppel. Moreover, even if estoppel does not apply, plaintiffs argue that the trial court's findings of fact and conclusions of law are supported by substantial evidence. We agree with plaintiffs that defendants are estopped from raising this issue on appeal.

"Under the doctrine of collateral estoppel, or issue preclusion, 'a final judgment on the merits prevents relitigation of issues actually litigated and necessary to the

outcome of the prior action in a later suit involving a different cause of action between the parties or their privies.' " *State ex rel. Tucker v. Frinzi*, 344 N.C. 411, 414, 474 S.E.2d 127, 128 (1996) (quoting *Thomas M. McInnis & Assocs., Inc. v. Hall*, 318 N.C. 421, 428, 349 S.E.2d 552, 557 (1986)). For collateral estoppel to apply, the party asserting the doctrine must show the following:

> that the earlier suit resulted in a final judgment on the merits, that the issue in question was identical to an issue actually litigated and necessary to the judgment, and that both [the party asserting collateral estoppel and the party against whom collateral estoppel is asserted] were either parties to the earlier suit or were in privity with parties.

*McInnis*, 318 N.C. at 429, 349 S.E.2d at 557 (citing *King v. Grindstaff*, 284 N.C. 348, 200 S.E.2d 799 (1973)). North Carolina has abandoned the third requirement— "mutuality of estoppel"— where the doctrine is asserted defensively, "provided the party against whom the estoppel is asserted enjoyed a full and fair opportunity to litigate that issue in the earlier proceeding." *Whiteacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004) (citing *McInnis*, 318 N.C. at 433–34, 349 S.E.2d at 560; *Bradley v. Hidden Valley Transp., Inc.*, 148 N.C. App. 163, 166, 557 S.E.2d 610, 613 (2001), *aff'd per curiam*, 355 N.C. 485, 562 S.E.2d 422 (2002)).

In determining whether an issue is "identical" to one that was "actually litigated and necessary" to the prior judgment, four additional criteria must be satisfied:

> (1) the issues must be the same as those involved in the

prior action, (2) the issues must have been raised and actually litigated in the prior action, (3) the issues must have been material and relevant to the disposition of the prior action, and (4) the determination of the issues in the prior action must have been necessary and essential to the resulting judgment.

*State v. Summers*, 351 N.C. 620, 623, 528 S.E.2d 17, 20 (2000) (citing *King*, 284 N.C. at 358, 200 S.E.2d at 806). However, "[i]t is well settled that the estoppel of a judgment extends only to the facts in issue as they existed at the time the judgment was rendered, and does not prevent a re-examination of the same questions between the same parties when in the interval the facts have changed or new facts have occurred which may alter the legal rights or relations of the litigants." *Flynt v. Flynt*, 237 N.C. 754, 757, 75 S.E.2d 901, 903 (1953) (citation and quotation marks omitted).

In the present case, all of the requirements of collateral estoppel have been satisfied. First, the dismissal of the foreclosure proceeding pursuant to Rule 41(b) operated as a final adjudication on the merits. *See* N.C. Gen. Stat. § 1-1A, Rule 41(b) (2013) ("Unless the court in its order for dismissal otherwise specifies, a dismissal under this section and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a necessary party, operates as an adjudication on the merits.").

Second, the issue here—whether the Board was required to separately apportion the cost of exterior doors and windows from the common property in the 2010 Special Assessment—is identical to the issue actually litigated and necessary to

the judgment at issue in *Johnson I* and *Johnson II*. In *Johnson I*, this Court was asked to review the trial court's dismissal of the foreclosure action against plaintiffs based on the Board's failure to allocate the cost of the common area improvements in the Second Assessment on a *pro rata* basis among all unit owners. *Johnson I*, 212 N.C. App. at 539, 714 S.E.2d at 172. We concluded that the Second Assessment was unlawful in that common area improvements were not assessed *pro rata* as required by Chapter 47A and the Original Declaration, as amended, but the Board otherwise had authority to assess costs for exterior windows and doors solely against plaintiffs. *Id.* at 542–43, 714 S.E.2d at 174. Because the trial court dismissed the foreclosure action without making separate findings as to which portion of the debt was for common area improvements and which was for exterior windows and doors, we vacated the trial court's order and remanded for further proceedings. *Id.* at 543, 714 S.E.2d at 174. The Board was further required to perform a new assessment that would separate the cost of plaintiffs' windows and doors from the cost of common area improvements. *Id.* Since our Supreme Court affirmed in *Johnson II*, 366 N.C. at 260, 741 S.E.2d at 313, no pertinent facts have changed which would alter the legal rights or relationships of the parties. The 2010 Special Assessment merely combines the First Assessment, which was not challenged, with the Second Assessment, which was declared invalid, and the relevant language in the Restated Declaration is identical to that in the Original Declaration, as amended.

Finally, plaintiffs need not prove mutuality of estoppel. Plaintiffs are asserting collateral estoppel defensively, and defendants Starboard and the individually-named Board members had a full and fair opportunity to litigate the issue in the previous action. Therefore, we conclude that defendants are estopped from re-litigating the issue of whether the cost of the exterior doors and windows had to be separately apportioned from the cost of common area improvements in the 2010 Special Assessment.

B. Defendants' Rule 50 Motion on Affirmative Defense of Implied Contract

Next, defendants argue that the trial court erred in denying defendants' motion for directed verdict on their affirmative defense of implied contract arising from the improvements to Building 33.[1] We disagree.

"The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 322, 411 S.E.2d 133, 138 (1991) (citing *Kelly v. Int'l Harvester Co.*, 278 N.C. 153, 179 S.E.2d 396 (1971)). "In determining the sufficiency of the evidence to withstand a motion for a directed verdict, all of the evidence which supports the non-movant's claim must be taken as true and considered in the light most favorable to the non-movant, giving

---

[1] In *Johnson II*, while our Supreme Court noted that defendants' implied contract claim was "cognizable under North Carolina law," the court did not address the merits because it was never pleaded in the proceeding, as required by Rule 8. *Johnson II*, 366 N.C. at 259, 741 S.E.2d at 312–13.

the non-movant the benefit of every reasonable inference which may legitimately be drawn therefrom and resolving contradictions, conflicts, and inconsistencies in the non-movant's favor." *Turner v. Duke Univ.*, 325 N.C. 152, 158, 381 S.E.2d 706, 710 (1989).

"An implied contract rests on the equitable principle that one should not be allowed to enrich himself unjustly at the expense of the other and on the principle that what one ought to do, the law supposes him to have promised to do." *Orange Water & Sewer Auth. v. Town of Carrboro,* 58 N.C. App. 676, 683, 294 S.E.2d 757, 761 (1982) (citing *Root v. Insurance Co.*, 272 N.C. 580, 158 S.E.2d 829 (1968)). " 'To recover in *quantum meruit,* a plaintiff must show that (1) services were rendered to the defendant; (2) the services were knowingly and voluntarily accepted; and (3) the services were not given gratuitously.' " *James River Equip., Inc. v. Tharpe's Excavating, Inc.*, 179 N.C. App. 336, 346, 634 S.E.2d 548, 556 (2006) (quoting *Wing v. Town of Landis,* 165 N.C. App. 691, 693, 599 S.E.2d 431, 433 (2004)).

Defendants cite no relevant legal authority which permits recovery in *quantum meruit* for costs unlawfully assessed against condominium unit owners, and we question whether, on these facts, such a defense can be sustained. *See Ron Medlin Constr. v. Harris*, 364 N.C. 577, 581, 704 S.E.2d 486, 489 (2010) ("[A]n 'unlicensed person' is precluded from recovering damages 'based on *quantum meruit*' for work performed pursuant to an unenforceable contract." (citation and quotation marks

omitted)); *Richardson v. Bank of Am., N.A.*, 182 N.C. App. 531, 561–63, 643 S.E.2d 410, 429–30 (2007) (denying recovery in *quantum meruit* where sale of single-premium credit insurance was made in violation of statute); *Thompson v. Thompson*, 313 N.C. 313, 314–15, 328 S.E.2d 288, 290 (1985) ("[I]t is generally held that if there can be no recovery on an express contract because of its repugnance to public policy, there can be no recovery on *quantum meruit*." (citation omitted)); *Brady v. Fulghum*, 309 N.C. 580, 586, 308 S.E.2d 327, 331 (1983) (recognizing that unlicensed contractors "have been precluded from maintaining actions if they must rely on their illegal act to justify recovery"); *Bryan Builders Supply v. Midyette*, 274 N.C. 264, 273, 162 S.E.2d 507, 512–13 (1968) ("To deny an unlicensed person the right to recover damages for breach of the contract, which it was unlawful for him to make, but to allow him to recover the value of work and services furnished under that contract would defeat the legislative purpose of protecting the public from incompetent contractors." (citation omitted)); *Covington v. Threadgill*, 88 N.C. 186, 189–90 (1883) (holding that a contract for the sale of intoxicating liquors was illegal because it was "contrary to the declared policy of the law, and in direct violation of its express provision," and "[b]eing thus illegal, . . . no action in affirmance of it can be sustained by the courts . . ."); *Joe Newton, Inc. v. Tull,* 75 N.C. App. 325, 329, 330 S.E.2d 664, 667 (1985) ("The same rule which prevents an unlicensed contractor from recovering for breach of the construction contract also denies recovery on the theory of *quantum*

*meruit*." (citation omitted)); *cf. Miles v. Carolina Forest Ass'n*, 141 N.C. App. 707, 713–14, 541 S.E.2d 739, 742 (2001) (holding invalid the amendments purporting to extend a declaration because the declaration itself did not authorize an extension, but remanding to determine existence of implied contract).

Assuming *arguendo* that defendants could sustain this affirmative defense, viewing the evidence in the light most favorable to the plaintiffs and resolving all contradictions, inconsistencies, and conflicts in their favor, there existed sufficient evidence to submit it to the jury. Specifically, there was evidence that plaintiffs did not voluntarily accept the renovation project proposed by the Board: plaintiffs voted against the renovations to Building 33; the parties never agreed on the cost of the renovations; plaintiffs tendered their first payment of the Second Assessment with a letter from counsel stating that the payment was being made under protest, as plaintiffs "object to the assessment for various reasons"; and the Board informed plaintiffs, by letter dated 17 December 2007, that the Second Assessment would be involuntarily imposed upon the Building 33 unit owners and that "[t]his decision has been made and is not open for further debate or changes at this point." Therefore, we find no error in the trial court's denial of defendants' motion for directed verdict on the issue of implied contract.

C. Defendants' Motions to Dismiss

Finally, defendants argue that the trial court erred in denying their motion to dismiss plaintiffs' claim pursuant to Rules 12(b)(6) and 12(b)(7) of the North Carolina Rules of Civil Procedure because plaintiffs were required to bring the declaratory judgment action by or on behalf of Starboard. We disagree.

"In our *de novo* review of a motion to dismiss for lack of standing, we view the allegations as true and the supporting record in the light most favorable to the non-moving party." *Mangum v. Raleigh Bd. of Adjustment*, 362 N.C. 640, 644, 669 S.E.2d 279, 283 (2008).

As plaintiffs correctly point out, the Declaratory Judgment Act affords to "*[a]ny interested person* under a . . . written contract or other writing[ ] constituting a contract" the right to "have determined any question of construction or validity arising under the instrument, . . . and obtain a declaration of rights, status, or other legal relations thereunder." N.C. Gen. Stat. § 1-254 (2013) (emphasis added). In addition, our courts have routinely permitted property owners to sue their homeowners associations for declaratory relief. *See, e.g.*, *Armstrong v. Ledges Homeowners Ass'n, Inc.*, 360 N.C. 547, 561, 633 S.E.2d 78, 88–89 (2006) (holding that, in declaratory action brought by property owners against homeowners association, disputed amendment to declaration of restrictive covenants was invalid and unenforceable); *Wise v. Harrington Grove Cmty. Ass'n, Inc.*, 357 N.C. 396, 397–99, 584 S.E.2d 731, 733–34 (2003) (holding challenged fine unlawful in declaratory action

by property owners against homeowners association); *Miesch v. Ocean Dunes Homeowners Ass'n*, 120 N.C. App. 559, 559–62, 464 S.E.2d 64, 65–66 (1995) (holding fees imposed by association invalid in declaratory action brought by condominium owners against homeowners association). Furthermore, a derivative action would be inappropriate in this case because plaintiffs are not alleging injury to Starboard and are not seeking to recover on its behalf. *See Stewart v. Kopp*, 118 N.C. App. 161, 165, 454 S.E.2d 672, 675 (1995) ("We note that even if the Board had exceeded its authority, a member's derivative action would not have been the appropriate cause of action, since plaintiff alleged no injury to the Association by the Board's action and was not seeking to recover on behalf of the Association."). Therefore, we conclude that the trial court did not err in denying defendants' motions to dismiss.

## III. Conclusion

The declaratory judgment in favor of plaintiffs was entered without error. Defendants' first argument regarding the cost of windows and doors in the 2010 Special Assessment is barred by collateral estoppel. In addition, the trial court did not err in denying defendants' motion for directed verdict on their affirmative defense of implied contract because, even assuming such a defense is cognizable on these facts, there is sufficient evidence that plaintiffs did not voluntarily accept the Board's proposed renovations to Building 33. Finally, the trial court did not err in denying defendants' motion to dismiss under Rules 12(b)(6) and 12(b)(7) because plaintiffs

were entitled to bring suit individually against Starboard. We, therefore, affirm the judgment of the trial court.

AFFIRMED.

Chief Judge McGEE and Judge INMAN concur.